IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAMUEL LEE, CODY BABB, VICENTE SANTOS, and MIGUEL ELIZONDO, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 5:16-cv-00856-XR |
| CHEMOIL CORPORATION, | § § | |
| Defendant. | § § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Samuel Lee ("Lee"), Cody Babb ("Babb"), Vicente Santos ("Santos"), and Miguel Elizondo ("Elizondo") file this, Plaintiffs' Motion for Summary Judgment (the "MSJ") against Defendant Chemoil Corporation ("Defendant" or "Chemoil").

## SUMMARY

This MSJ is supported by the attached Brief containing citations to supporting authorities as required by Local Court Rule CV-7(d)(1)&(2). Furthermore, this MSJ is supported by evidence contained in Plaintiffs' Appendix, which is filed as a separate document pursuant to Local Court Rule CV-7(d)(1). To the extent necessary, the attached Brief and Appendix are incorporated by reference as if set forth fully herein.

Plaintiffs have pleaded that Defendant has failed to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA"). Specifically, Plaintiffs were hourly-paid employees of Defendant who did not receive

any overtime premium compensation. Although Plaintiffs regularly worked over 40 hours per workweek, they were only paid their "straight time" hourly rate of pay for each hour worked.

Plaintiffs were employed by Defendant as fueling operations employees in connection with oilfield fracking operations and had job titles of frac fuel drivers. Plaintiffs' job duties consisted of manual labor, including pumping fuel to engines/machines used at remote oilfield frac sites, cleaning fuel spills as they occurred, driving vehicles, loading vehicles, and maintaining and repairing equipment. In connection with those job duties, Plaintiffs were required to drive Ford F-150 pickup trucks ("Chemoil Pickup Trucks") provided by Chemoil to complete their tasks.

Defendant's main affirmative defense is that Plaintiffs were not entitled to overtime premiums because they were allegedly exempt employees pursuant to the Motor Carrier Act Exemption ("MCA Exemption" or "MCAE")[1] as they occasionally drove trucks weighing over 10,000 pounds in interstate commerce.

However, as shown *infra*, Defendant has not met, and cannot meet, its substantial burden of proof with regard to the MCAE due to the Technical Corrections Act of 2008 ("TCA"), which is an exception to the MCAE. *See* SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 160-21 (effective June 6, 2008). The TCA applies as an exception to the MCAE pleaded by Defendant because Plaintiffs' weekly job duties, in whole or in part, were that of drivers, driver helpers, and/or loaders relative to Chemoil's Pickup Trucks weighing 10,000 pounds or less in transportation on public highways in interstate commerce.

Plaintiffs have conducted written and oral discovery which demonstrates the inapplicability of the MCA (and other affirmative defenses which "Defendant is considering

---

[1] *See* ECF No. 47, p. 4 (citing 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782).

withdrawing"), as well as the applicability of the TCA exception (sometimes known as the "small vehicle" exception) to Plaintiffs. As the TCA exception applies to Plaintiffs, and Defendant cannot meet its burden to prove otherwise, the payment of overtime premium wages to Plaintiffs was, at all times relevant to this lawsuit, mandatory.

This Court recently resolved a case in favor of plaintiffs under nearly identical factual circumstances. *See Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441 (W.D. Tex. 2016) (Rodriguez, J.). Moreover, Magistrate Judge Pamela Mathy recently issued a Report and Recommendation adopted by Judge Orlando Garcia in favor of a plaintiff in a situation similar to Plaintiffs in their role as frac fuel drivers. *See Pye v. Oil States Energy Servs., LLC*, No. 5:15-CV-678-OLG, (W.D. Tex. October 3, 2016) *adopted by Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541 (W.D. Texas 2017).[2] Here, it is even clearer that Plaintiffs are/were non-exempt employees given that they were at all times hourly-paid workers performing manual labor who, when utilizing vehicles, spent the majority of that time using pickup trucks issued to them by Chemoil with a Gross Vehicle Weight Rating ("GVWR") of 10,000 pounds or less.

As to the damages owed, Plaintiffs have sought and Defendant has produced detailed records of the hours worked and hourly rate of pay of each Plaintiff per week. Consequently, it is a simple calculation to determine each Plaintiff's unpaid overtime premiums (*i.e.*, multiply all hours worked over 40 per week by half of each Plaintiff's respective hourly rate of pay).

When an employer violates the FLSA, employee plaintiffs are generally entitled to liquidated damages in an amount equal to those overtime wages which a defendant employer did not pay them. The FLSA requires the employer to prove, by affirmative defense, an objective and subjective good faith basis for believing its practices or policies with regard to the lack of

---

[2]  **App. pp. 31-75** (Ex. E – *Pye v. Oil States Energy Servs., LLC* Order).

overtime wage payments did not violate the FLSA. Here, although Defendant will rely on the results of a Department of Labor ("DOL") investigation, it is clear that Defendant did not inform the DOL that frac fuel drivers like Plaintiffs were regularly operating Chemoil-owned vehicles with a GVWR of 10,000 pounds or less. Rather, Defendant conflated two job positions – the "frac fuel driver" position and the "transport" position. As a result, the Department of Labor's pronouncement that "*CDL drivers* were found to be exempt under the Motor Carrier Act" is an insufficient basis to establish Defendant's alleged good faith where Defendant misled the DOL about whether *frac fuel drivers* were driving small vehicles. Defendant's obfuscation of the facts to the DOL also merits a finding of willfulness, which would entitle Plaintiffs to a three year limitations period prior to filing this lawsuit, as opposed to two years.

Finally, prevailing plaintiffs in FLSA cases are entitled to mandatory legal fees, costs, and post-judgment interest. Plaintiffs request that the Court set the deadline for Plaintiffs' counsel to submit a fee and cost petition at 14 days after the entry of an order granting summary judgment in Plaintiffs' favor, in addition to allowing supplemental fee and cost petitions as necessary.

In conclusion, Plaintiffs request that this Court enter summary judgment in their favor, awarding back overtime wages and liquidated damages as appropriate, post-judgment interest, and permitting Plaintiffs' counsel to submit a fee and cost petition no later than 14 days after the entry of summary judgment in Plaintiffs' favor. Plaintiffs respectfully request such other and further relief to which they may be justly entitled including, but not limited to, partial summary judgment on any matter deemed appropriate by the Court.

Respectfully submitted,

By:    s/Allen R. Vaught
        Allen R. Vaught, TX Bar No. 24004966
        Melinda Arbuckle, TX Bar No. 24080773
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas 75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com
        marbuckl@baronbudd.com

        ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

On August 22, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the CM/ECF method. I hereby certify that I have served all counsel of record electronically.

        s/Allen R. Vaught
        Allen R. Vaught

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ....................................................................................... **viii**

**I.**     **STATEMENT OF ISSUES** ......................................................................... **1**

**II.**     **STATEMENT OF FACTS NOT IN DISPUTE** ........................................... **1**

    **A.**     **Employment Relationship.** .................................................................**1**

    **B.**     **FLSA Coverage.** ..................................................................................**2**

    **C.**     **Overtime Violations.** ..........................................................................**2**

    **D.**     **Chemoil's Business Operations.** .........................................................**3**

    **E.**     **Job Duties of Frac Fuel Drivers.** .......................................................**4**

    **F.**     **Department of Labor Investigation.** ..................................................**9**

    **G.**     **Chemoil's Alleged Subsequent Remedial Measures.** .......................**10**

**III.**     **ARGUMENTS AND AUTHORITIES** ....................................................... **11**

    **A.**     **Legal Standards.** ...............................................................................**11**

        1.     Summary Judgment Standard. ...................................................11

        2.     Employer's Burden of Proof with Regard to FLSA Exemptions. .............12

    **B.**     **Threshold Liability Exists Because Defendant Was Plaintiffs' Employer, Defendant was an Enterprise Engaged in Commerce, and It Is Undisputed that Defendant Did Not Pay Overtime Premiums to Plaintiffs.** .........................................................................................**13**

    **C.**     **The Administrative, Executive, and Highly Compensated Employee Exemptions Do Not Apply to Plaintiffs Because They Were All Hourly-Paid Employees, Performed Manual Labor Tasks, and Earned Less than $100,000 Per Year.** ...............................................**15**

|   | 1. | Defendant Cannot Prove that Any of the Pleaded Exemptions Apply Based on Pay Received – Plaintiffs Were Hourly-Paid, as Opposed to Salaried, Employees. ...............................................16 |

1. Defendant Cannot Prove that Any of the Pleaded Exemptions Apply Based on Pay Received – Plaintiffs Were Hourly-Paid, as Opposed to Salaried, Employees. ...............................................16

2. Manual Labor Work, Such as that Performed by Plaintiffs, Precludes Application of the Executive, Administrative, and HCEE. ...........................................................................................16

3. Additional Reasons Why Defendant Cannot Prove the Administrative or Executive Exemptions. ..................................18

4. The HCEE Cannot Be Proven by Defendant because Plaintiffs Did Not Have Annual Compensation of $100,000 or More. ............................19

**D.** **The Motor Carrier Act Exemption Does Not Apply Because Plaintiffs Performed Weekly Work, in Whole or in Part, as Drivers, Driver Helpers, and/or Loaders of Motor Vehicles with Gross Vehicle Weight Ratings of 10,000 Pounds or Less. ........................................................19**

1. The Clear Unambiguous Language of the TCA Narrows the Scope of the MCA Exemption, and Federal Courts Have Relied on the Plain Meaning of "In Part" to Recognize the Expansion of the FLSA's Overtime Protections Through the TCA. ....................................19

2. Plaintiffs Were "Covered Employees" Pursuant to the Technical Corrections Act. ........................................................................20

**IV.** **DAMAGES** ................................................................................................ **23**

**A.** **Plaintiffs Are Entitled to Back Unpaid Overtime Wages..................................23**

**B.** **Plaintiffs Are Entitled to Liquidated Damages. ................................................24**

**C.** **Plaintiffs Are Entitled to a Three Year Statute of Limitations Where Defendant's Violations of the FLSA Were Willful. .........................................28**

**D.** **Post-Judgment Interest, Legal Fees, and Costs................................................29**

**V.** **CONCLUSION** ............................................................................................ **29**

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*,
  324 U.S. 490 (1945)............................................................................12

*Aikins v. Warrior Energy Servs. Corp.*,
  No. 6:13-CV-54, 2015 WL 1221255 (S.D. Tex. Mar. 17, 2015) ...........................................20

*Allen v. Coil Tubing Servs., L.L.C.*,
  846 F. Supp. 2d 678 (S.D. Tex. 2012) ............................................................13, 20

*Allen v. Coil Tubing Servs., L.L.C.*,
  755 F.3d 279 (5th Cir. 2014) ....................................................................13, 20

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,
  515 F.3d 1150 (11th Cir. 2008) .....................................................................26

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)............................................................................21

*Barcellona v. Tiffany English Pub, Inc.*
  597 F.2d 464 (5th Cir. 1979) .....................................................................25

*Benavides v. City of Austin*,
  No. A-11-CV-438-LY, 2012 WL 12882001 (W.D. Tex. Sept. 21, 2012)..............................16

*Bernard v. IBP, Inc. of Neb.*,
  154 F.3d 259 (5th Cir. 1998) .....................................................................26

*Black v. Settlepou, P.C.*,
  732 F.3d 492 (5th Cir. 2013) .....................................................................29

*Boudreaux v. Swift Transp. Co.*,
  402 F.3d 536 (5th Cir. 2005) .....................................................................12

*Brantley v. Inspectorate Am. Corp.*,
  821 F. Supp. 2d 879 (S.D. Tex. 2011) ...............................................................25

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945)............................................................................24

*In re Chinese Manufactured Drywall Prod. Liab. Litig.*,
  894 F. Supp. 2d 819 (E.D. La. 2012), ...............................................................9

*Plaintiffs' Motion for*
*Summary Judgment*

*In re Chinese Manufactured Drywall Prod. Liab. Litig.*,
   742 F.3d 576 (5th Cir. 2014) ...............................................................9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   753 F.3d 521 (5th Cir. 2014) ...............................................................9

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) ..............................................................28

*Duffie v. United States*,
   600 F.3d 362 (5th Cir. 2010) ..............................................................12

*E.E.O.C. v. LHC Grp., Inc.*,
   773 F.3d 688 (5th Cir. 2014) ..............................................................11

*Galvan v. FTS Int'l Servs., LLC*,
   No. MO:16-CV-00147-RAJ, 2017 WL 1284794 (W.D. Tex. Mar. 21, 2017) ......................17

*Guyton v. Legacy Pressure Control*,
   No. 5:15-CV-1075-RCL, 2017 WL 244868 (W.D. Tex. Jan. 18, 2017) ...........................17, 19

*Heidtman v. Cty. of El Paso*,
   171 F.3d 1038 (5th Cir. 1999) ............................................................12

*Integrity Staffing Sols., Inc. v. Busk*,
   135 S.Ct. 513 (2014) ........................................................................21

*Johnson v. Heckmann Water Res. (CVR), Inc.*,
   758 F.3d 627 (5th Cir. 2014) ..............................................................13

*Martin v. Selker Bros., Inc.*,
   949 F.2d 1286 (3rd Cir. 1991) ...........................................................28

*Mayan v. Rydborn Express, Inc.*,
   No. 07-2658, 2009 WL 3152136 (E.D. Pa. Sept. 30, 3009) .................................20

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ........................................................................28

*McLean v. Garage Mgmt. Corp.*,
   Nos. 10 Civ. 3950(DLC), 09 Civ. 9325(DLC), 2012 WL 1358739 (S.D.N.Y.
   Apr. 19, 2012) ..........................................................................26, 27

*McLeland v. 1845 Oil Field Servs.*,
   97 F. Supp. 3d 855 (W.D. Tex. 2015) .....................................................12

*Mireles v. Frio Foods, Inc.*,
   899 F.2d 1407 (5th Cir. 1990) ............................................................25

*Mitchell v. Ky. Fin. Co.*,
359 U.S. 290 (1959)........................................................................12

*Moore v. City of Austin*,
No. A-16-CV-165-LY, 2016 WL 4146199 (W.D. Tex. Aug. 2, 2016)....................12

*Moore v. Performance Pressure Pumping Servs., LLC*,
No. 5:15-cv-346-RCL, 2017 WL 1501436 (W.D. Tex. Apr. 26 2017)...................13

*Nero v. Indus. Molding Corp.*,
167 F.3d 921 (5th Cir. 1999) .................................................................25

*O'Brien v. Lifestyle Transp., Inc.*,
956 F. Supp. 2d 300 (D. Mass 2013) ........................................................20

*Olibas v. Barclay*,
838 F.3d 442 (5th Cir. 2016) ..................................................... *passim*

*Olibas v. Native Oilfield Servs., LLC*,
104 F. Supp. 3d 791 (N.D. Tex. 2015) ............................................23, 25, 29

*Pearson v. Trinity Armored Sec., Inc.*,
No. 4:13-CV-281-Y, 2014 WL 12531275 (N.D. Tex. Sept. 3, 2014) ...................16

*Perkins v. Bank of Am.*,
602 F. App'x 178 (5th Cir. 2015) ............................................................11

*Pye v. Oil States Energy Servs., LLC*,
233 F. Supp. 3d 541 (W.D. Tex. 2017).......................................................22

*Roche v. S-3 Pump Serv., Inc.*,
154 F. Supp. 3d 441 (W.D. Tex. 2016)...............................................13, 19, 22, 23

*Solis v. Hooglands Nursery, L.L.C.*,
372 F. App'x 528 (5th Cir. 2010) ............................................................26

*Solis v. Min Fang Yang*,
345 F. App'x 35 (6th Cir. 2009) ..............................................................27

*Tran v. Thai*,
No. CIV.A. H-08-3650, 2010 WL 5232944 (S.D. Tex. Dec. 16, 2010)................25

*Vanzzini v. Action Meat Distribs.*,
995 F. Supp. 2d 703 (S.D. Tex. 2014) .......................................................20

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
605 F. App'x 349 (5th Cir. 2015) ............................................................17

*Plaintiffs' Motion for*
*Summary Judgment*

**Statutes**

28 U.S.C. § 1961 ...................................................................................................................29

29 U.S.C. § 203 ....................................................................................................................14

29 U.S.C. § 213 ...............................................................................................................12, 15

29 U.S.C. § 216 ...............................................................................................................23, 25

29 U.S.C. § 254 ....................................................................................................................21

29 U.S.C. § 255 ................................................................................................8, 14, 23, 28

29 U.S.C. § 260 ...............................................................................................................25, 26

Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 160-21 (effective June 6, 2008)............... *passim*

**Other Authorities**

29 C.F.R. § 541.3(a) ............................................................................................................16

29 C.F.R. § 541.100-06 ...................................................................................................15, 18

29 C.F.R. § 541.200-04 ...................................................................................................15, 18

29 C.F.R. § 541.601 ............................................................................................................15

29 C.F.R. § 782 ....................................................................................................................12

29 C.F.R. § 785.41 ..............................................................................................................21

FED. R. CIV. P. 30 .............................................................................................................2, 8

FED. R. CIV. P. 56 ..............................................................................................................11

FED. R. EVID. 407 ..............................................................................................................10

FED. R. EVID. 1006 ............................................................................................................19

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.      STATEMENT OF ISSUES

This MSJ presents two issues with respect to liability:

1.      Can Defendant prove all elements of the Motor Carrier Act Exemption ("MCAE"), including proving that Plaintiffs did not, in whole or in part, work as drivers, driver helpers, and/or loaders of motor vehicles with a gross vehicle weight rating ("GVWR") of 10,000 pounds or less according to the Technical Corrections Act ("TCA") exception to the MCAE during each and every relevant workweek?; and

2.      Can Defendant prove each and every element of all other alleged FLSA exemptions, such as the Administrative, Executive, and Highly Compensated Employee Exemptions, since Plaintiffs were all hourly-paid employees, performed manual labor, and had total annual compensation of less than $100,000 per year?

The MSJ also presents an issue with respect to liquidated damages:

1.      Can Defendant meet its burden of proof to show it had a good faith basis for believing it was in compliance with the FLSA by relying on a Department of Labor investigation where it misled the Department of Labor regarding material facts which would make frac fuel drivers eligible for overtime pay due to the TCA exception to the MCAE?

## II.      STATEMENT OF FACTS NOT IN DISPUTE

### A.  Employment Relationship.

Defendant has admitted that each Plaintiff was, at all times relevant to this lawsuit, an employee of Chemoil Corporation.[3]

---

[3]  **App. pp. 1-5** (Ex. A – excerpts from Def. live Answer (ECF No. 47) and Def. Resp. to Plaintiffs' Req. for Admission).

## B. FLSA Coverage.

Defendant has admitted that it was, at all times relevant to this lawsuit, an "enterprise engaged in commerce" under the FLSA.[4] Defendant has admitted that it is and has been an employer of two or more employees engaged in commerce.[5] Finally, Defendant admits that its annual gross volume of sales made or business done in the relevant time period is not less than $500,000.[6]

## C. Overtime Violations.

Defendant's agents Mr. Mike McLaughlin (Defendant's President of Energy Division) and its Rule 30(b)(6) Corporate Representative Mr. Jeff Green (Defendant's Chief Financial Officer of Energy Division) have admitted[7] and Defendant's payroll records relative to the individual Plaintiffs in this case reflect that Plaintiffs regularly worked in excess of 40 hours per workweek, but that Chemoil did not pay them any corresponding overtime premium compensation.[8] Instead, Chemoil paid straight time only for all hours worked per workweek.[9]

Consequently, if Defendant cannot meet its burden of proof to show that Plaintiffs are exempt employees under the FLSA, then Chemoil has violated the FLSA and summary judgment should be granted in Plaintiffs' favor.

---

[4]  **App. p. 6-10** (Ex. B – excerpts from Def. live Answer (ECF No. 47) and Def. Resp. to Plaintiffs' Req. for Admission).

[5]  *Id.* (admitting that "during the time period relevant to this lawsuit, Defendant had two or more employees handling or working on goods and/or materials in their work for Chemoil that were moved in and/or produced for commerce by any other person or company).

[6]  *See id.*

[7]  **App. pp. 791-793** (Ex. P – McLaughlin Decl. ¶¶ 2-4); **app. pp. 489, 490-92** (Ex. M - Green 30(b)(6) Depo. 41:20-23, 42:17-43:4, 43:13-44:19).

[8]  **App. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)).

[9]  *Id.*

### D. Chemoil's Business Operations.

Chemoil provides goods and services in the oilfield industry.[10] Specifically, Chemoil provides mobile fueling services to the fracking industry.[11] Chemoil's fracking company customers pay Chemoil to send large ten-wheel fuel trucks, known interchangeably by Chemoil as "bobtails" or "tankwagons"[12] but hereinafter referred to as "bobtails," to remote sites in Texas and other states. These large trucks contain fuel which is used to power the engines and equipment ("equipment")[13] of Chemoil's customers' fracking equipment at oilfield frac sites.

Chemoil also provides the fueling crew that fuels its customers' engines and equipment at those oilfield fracking sites.[14] The fueling crew consists of frac fuel drivers, who maintain CDLs, and frac fuel technicians, who share all job duties with frac fuel drivers apart from driving trucks with a GVWR of 10,000 pounds or more.[15] Because most oil and gas operations, including fracking operations, run 24 hours per day, Chemoil generally provides two "opposing" crews, a day crew and a night crew, per project.[16] Each crew works approximately 12 hours per day.[17] Once the bobtail is parked at a given wellsite and commences fueling operations, other Chemoil employees known as "transport" workers drive to the frac site to refuel the bobtail using another truck.[18] The frac fueling crew is supervised by Field Compliance Coordinators ("FCCs") who are in turn supervised by Operations Compliance Coordinators ("OCCs").[19]

---

[10] **App. p. 478** (Ex. M – Green 30(b)(6) Depo. 30:7-8).

[11] *Id.* (Ex. M. – Green 30(b)(6) Depo. 30:9-11).

[12] **App. pp. 478-79** (Ex. M – Green 30(b)(6) Depo. 30:12-31:9).

[13] *Id.*; **app. p. 490** (Ex. M – Green 30(b)(6) Depo. 42:9-16).

[14] *Id.*

[15] **App. p. 349** (Ex. K – Lee Depo, Exhibit 4); **app. pp. 368, 445** (Ex. L – Babb Depo. 47:5-21, Exhibit 3); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3).

[16] **App. pp. 309-10, 314-15, 329** (Ex. K – Lee Depo. 60:3-61:3, 65:17-66:2, 88:15-25).

[17] **App. p. 306-07** (Ex. K – Lee Depo. 57:23-58:24).

[18] **App. p. 503** (Ex. M – Green 30(b)(6) Depo. 55:3-14); **app. p. 80** (Babb 2d Decl. ¶ 1); a**pp. p. 315** (Ex. K – Lee Depo 66:10-17); **app. pp. 361, 386, 394-95** (Ex. L – Babb Depo. 40:12-20, 66:9-14, 81:17-82:12).

[19] **App. pp. 474, 482-484** (Ex. M – Green 30(b)(6) Depo. 26:4-10, 34:13-36:9).

Chemoil's headquarters are located in Oklahoma City,[20] but it operates various satellite offices or "yards"[21] out of states across the United States, including, as relevant to this lawsuit, Midland, Texas, Pecos, Texas and Pleasanton, Texas.[22] The yards are sites where Chemoil's various trucks and other equipment are kept when not in use.[23] Frac fueling crews are "mobilized" from the yards, and sent out to various remote frac sites where they provide fueling services to fracking operations.[24] While at those frac sites far from the yards, frac fueling crews generally stay at hotels.[25] Frac sites are secured sites where personal vehicles are not allowed.[26] Chemoil provided Plaintiffs and other frac fuel drivers and their crews with Chemoil Pickup Trucks, both to access the frac sites and to complete necessary job duties during their respective shifts.[27]

### E.  Job Duties of Frac Fuel Drivers.

Chemoil fueling projects consisted of three stages – mobilization, fueling, and demobilization.[28] Fueling projects at frac sites could be as short as one day or as long as several weeks.[29]

---

[20]  **App. pp. 479-480** (Ex. M – Green 30(b)(6) Depo. 31:22-11).

[21]  *Id.*

[22]  **App. p. 562** (Ex. M – Green 30(b)(6) Depo. 114:1-6); **app. p. 300** (Ex. K – Lee Depo. 33:20-21); **app. pp. 406, 424** (Ex. L – Babb Depo. 107:1-10, 128:1-3); **app. p. 562** (Ex. M – Green 30(b)(6) Depo. 114:1-6); **app. p. 84** (Ex. G – Santos Decl., ¶ 6).

[23]  **App. p. 490** (Ex. M – Green 30(b)(6) Depo. 42:9-16); **app. p. 313** (Ex. K – Lee Depo. 64:8-12).

[24]  **App. pp. 503, 505,** (Ex. M – Green 30(b)(6) Depo. 55:20-25, 57:6-23); **app. pp. 307-308** (Ex. K – Lee Depo. 58:25-59:13); **app. p. 407** (Ex. L – Babb Depo. 108:8-12).

[25]  **App. p. 507** (Ex. M – Green 30(b)(6) Depo. 59:2-10); **app. pp. 325-36** (Ex. K – Lee Depo. 85:15-86:3); (Ex. L – Babb Depo. 99:14-22); **app. p. 84** (Ex. G – Santos Decl. ¶ 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

[26]  **App. p. 504-05** (Ex. M – Green 30(b)(6) Depo. 56:18-57:8); **app. p. 78** (Ex. F – Babb Decl. ¶ 8); **app. p. 84** (Ex. G – Santos Decl. ¶ 6).

[27]  **App. p. 514** (Ex. M. – Green 30(b)(6) Depo. 66:7-12 ("Q: And what is it that the F-150s are used for? **A: They [sic] crews use them to get back and forth to the job.** Q: Do they ever use them to haul things like tools? **A: Yes. And containments.**")).

[28]  **App. pp. 504-05** (Ex. M – Green 30(b)(6) Depo. 56:25-57:23).

[29]  **App. p. 78** (Ex. F – Babb Decl. ¶ 7); **app. p. 307** (Ex. K – Lee Depo. 58:81-24); **app. pp. 366** (Ex. L – Babb Depo. 45 ("Q: Did you never drive a CDL truck? **A: Just when we moved from site to site which could be anywhere from two, three days to several months.**")); **app. p. 83** (Ex. G – Santos

During mobilization, a frac fueling crew would meet at a Chemoil yard, load Chemoil Pickup Trucks with tools, supplies, and spill containment equipment, and then drive bobtails and Chemoil Pickup Trucks to a fracking site some distance away.[30]

Once on-site, Plaintiffs and other frac fuel drivers performed the same job duties as frac fuel technicians, included fueling wellsite fracking equipment.[31] During the course of the day, Chemoil's "transport" drivers would sometimes stop to refuel the bobtails, which served as stationary fuel repositories at the wellsite.[32] Periodically, in connection with maintaining and repairing the bobtails, Plaintiffs had to drive Chemoil Pickup Trucks into nearby towns or back to the yard to obtain necessary parts and supplies.[33] Plaintiffs frequently hauled tools and supplies in the Chemoil Pickup Trucks around the worksite, especially in the case of spills which would require the use of absorbent pads.[34] Plaintiffs regularly had to get gas for the Chemoil Pickup Trucks during their shift.[35] Plaintiffs' work duties often included the usage of Chemoil Pickup Trucks to go into town or to the yard during shifts to obtain necessary supplies, such as fuel nozzles and tools.[36]

On projects lasting more than one day, Chemoil frac fueling crews stayed in hotels while

Decl. ¶ 3).

[30] **App. pp. 504-05** (Ex. M – Green 30(b)(6) Depo. 56:25-57:23); **app. p. 308** (Ex. K – Lee Depo. 59:3-13; **app. p. 405** (Ex. L – Babb Depo. 106:1-107:10).

[31] **App. p. 349** (Ex. K – Lee Depo, Exhibit 4); **app. pp. 368, 445** (Ex. L – Babb Depo. 47:5-21, Exhibit 3); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3).

[32] **App. p. 315** (Ex. K – Lee Depo 66:10-17); **app. pp. 361, 386, 394-95** (Ex. L – Babb Depo. 40:12-20, 66:9-14, 81:17-82:12).

[33] **App. p. 368** (Ex. L – Babb Depo. 47:5-21); **app. pp. 83-4** (Ex. G – Santos Decl. ¶ 4) **app. p. 90** (Ex. H – Elizondo Decl. ¶ 4).

[34] **App. p. 78** (Ex. F – Babb Decl. ¶ 8); **app. p. 311** (Ex. K – Lee Depo. 62:8-25); **app. pp. 368, 382-83** (Ex. L – Babb Depo. 47:5-21 , 62:19-63:6); **app. pp. 83-4** (Ex. G – Santos Decl. ¶ 4) **app. p. 90** (Ex. H – Elizondo Decl. ¶ 4); **app. p. 514** (Ex. M. – Green 30(b)(6) Depo. 66:7-12).

[35] **App. pp. 336-38** (Ex. K – Lee Depo. 95:21-96:11, 96:22-97:4).

[36] **App. pp. 78** (Ex. F – Babb Decl. ¶ 8); **app. pp. 336-38** (Ex. K – Lee Depo. 95:21-96:11, 96:22-97:4); **app. pp. 368, 382-83** (Ex. L – Babb Depo. 47:5-21, 62:19-63:6); **app. pp. 83-4** (Ex. G – Santos Decl. ¶ 4) **app. p. 90** (Ex. H – Elizondo Decl. ¶ 4).

off-shift.[37] Plaintiffs testify that both crews generally shared a single Chemoil Pickup Truck as a crew vehicle while on these extended and remote projects.[38] In order to keep the frac site staffed, Plaintiffs had to engage in multiple trips in order to get relieving crew members to the wellsite and those crew members completing a shift to the hotel.[39] First, a frac fueling crew member, like Plaintiffs, would drive the Chemoil Pickup Truck to the hotel or the yard,[40] where the relieving crew was located.[41] Then the entire on-coming crew would board the Chemoil Pickup Truck, and drive to the frac site.[42] One or two oncoming member(s), frequently a frac fuel driver, was/were then responsible for driving the rest of the crew being relieved from their shift to the hotel, and then returning the Chemoil Pickup Truck to the wellsite.[43] Alternatively, one individual from the replacement crew might remain behind at the hotel, and later return with the Chemoil Pickup Trucks.[44] On a weekly basis, and regularly on a daily basis, Plaintiffs had to drive at least one leg of the aforementioned crew rotation trip.[45] Furthermore, during these and other trips, Plaintiffs carried necessary supplies such as fire extinguishers, wheel chalks, grounding cables, safety harnesses, and oil-absorbing cleaning pads, and sometimes purchased gas for the Chemoil

---

[37] **App. p. 507** (Ex. M – Green Depo. 59:2-6); **app. pp. 380-81** (Ex. L – Babb Depo. 60:22-61:3); **app. pp. 83-84** (Ex. G – Santos Decl. ¶¶ 5, 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

[38] **App. pp. 325-33,** (Ex. K – Lee Depo. 84:21-92:10, 93:25-95:12); **app. pp. 399-402** (Ex. L – Babb Depo. 100:16-21, 101:2-103:22); **app. pp. 83-84** (Ex. G – Santos Decl. ¶¶ 5, 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

[39] *See generally*, **app. pp. 325-33,** (Ex. K – Lee Depo. 84:21-92:10, 93:25-95:12); **app. pp. 399-402** (Ex. L – Babb Depo. 100:16-21, 101:2-103:22).

[40] **App. pp. 506-07** (Ex. M – Green 30(b)(6) Depo. 58:20-59:10).

[41] **App. pp. 325-33,** (Ex. K – Lee Depo. 84:21-92:10, 93:25-95:12); **app. pp. 399-402** (Ex. L – Babb Depo. 100:16-21, 101:2-103:22); **app. pp. 83-84** (Ex. G – Santos Decl. ¶¶ 5, 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

[42] **App. pp. 326-33** (Ex. K – Lee Depo. 85:1-5, 85:19-86:3, 86:16-87:8, 88:15-92:10); **app. pp. 101-02** (Ex. L – Babb Depo. 101:2-103:22).

[43] *Id.*

[44] **App. p. 401** (Ex. L – Babb Depo. 102:9-15).

[45] **App. pp. 328, 333** (Ex. K – Lee Depo. 87:16-21, 92:4-10); **app. pp. 83-84** (Ex. G – Santos Decl. ¶¶ 5, 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

Pickup Trucks for the benefit of Chemoil.[46]

Although Plaintiffs maintained Commercial Driver's Licenses (CDLs), they did not require those licenses to perform the bulk of their job duties.[47] In fact, a simple analysis of Defendant's production of nearly 1,600 pages of DOT records[48] for the four Plaintiffs demonstrates that they only spent approximately between 1.09% (Santos) and 3.69% (Lee) of their time working for Chemoil driving Chemoil's bobtails.[49] The remainder of the time was, in addition to driving Chemoil Pickup Trucks, spent performing the exact same duties of frac fuel technicians,[50] who admittedly earned overtime premium pay.[51]

Defendant relies largely on its self-serving statement that, although its F-150s were provide to frac fueling crews for their use in performing job duties throughout their shift and for accessing secure worksites, frac fuel drivers did not drive those F-150s.[52] Nonetheless, Plaintiffs have established that Defendant cannot prove its illogical and self-serving statement.[53] As

---

[46] **App. p. 331** (Ex. K – Lee Depo. 90:11-14); **app. pp. 83-84** (Ex. G – Santos Decl. ¶ 4); **app p. 90** (Ex. H – Elizondo Decl. ¶ 4).

[47] **App. p. 229** (Ex. K – Lee Depo. 32:13-19); **app. p. 391** (Ex. L – Babb Depo. 76:14-16); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app p. 90** (Ex. H – Elizondo Decl. ¶ 3).

[48] As mentioned, Defendant produced approximately 1,600 pages of DOT records regarding time Plaintiffs spent driving Chemoil's bobtails (called "tankwagons" in this report). (bates-labeled CHEMOIL_LEE0000208-384 (Samuel Lee); CHEMOIL_LEE0000385-1093 (Cody Babb); CHEMOIL_LEE0001094-1894 (Vicente Santos); CHEMOIL_LEE0001953-2871 (Miguel Elizondo). An example of those records is provided in redacted form at **app. pp. 466-67** (Ex. O – Summary of Defendant- Produced DOT Logs of Plaintiffs). In an effort to avoid filing 1,600 pages of documents with the court, Plaintiffs have provided the summary documents. Defendant may review their accuracy by comparing the summary documents with its own production.

[49] **App. p. 725** (Ex. O – Lee Analysis – 3.69% of total hours paid spent driving bobtail); **app. p. 743** (Ex. O – Babb Analysis – 2.54% of total hours paid spent driving bobtail); **app. p. 766** (Ex. O – Santos Analysis – 1.09% of total hours paid spent driving bobtail); **app. p. 790** (Ex. O – Elizondo Analysis – 2.22% of total hours paid spent driving bobtail).

[50] **App. p. 349** (Ex. K – Lee Depo, Exhibit 4); **app. pp. 368, 445** (Ex. L – Babb Depo. 47:5-21, Exhibit 3); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3).

[51] **App. pp. 457-58** (Ex. M – Green 30(b)(6) Depo. 9:23-10:1)**. *See also* **app. pp. 29-30** (Ex. D – Elizondo Damages (demonstrating that Elizondo began receiving overtime pay when he became a frac fuel technician)).

[52] **App. pp. 512-14** (Ex. M – Green 30(b)(6) Depo. 64:6-15, 65:5-66:2).

[53] **App. pp. 11-19** (Ex. C – Defendant Admissions regarding usage of Ford F-150s by Plaintiffs). *See also* **app. p. 588** (Ex. M – Green 30(b)(6) Depo. 140:9-21).

opposed to its bobtails,[54] Defendant has no means by which to track whether frac fuel technicians or frac fuel drivers drove its Chemoil Pickup Trucks,[55] and its Corporate Representative admitted in his Rule 30(b)(6) deposition that he, and therefore Chemoil, does not know that frac fuel drivers do not drive Chemoil Pickup Trucks.[56] However, the text message statement of Plaintiffs' supervisor, Ryan Burries, demonstrates Chemoil *did* know that Plaintiffs and other frac fuel drivers were regularly driving Chemoil Pickup Trucks during their workweeks, but did not pay them overtime premium compensation.[57]

Some Plaintiffs worked in job positions other than frac fuel drivers for Defendant, however this action applies only to the times within the FLSA statute of limitations[58] during which Plaintiffs were employed with the job title of frac fuel drivers.[59] When employed as frac

---

[54] *See* **app. pp. 718-19** (Ex. O – Summary of Defendant-Produced DOT Logs, Teletrac log showing Cody Babb drove specific tank wagon).

[55] **App. pp. 11-19** (Ex. C – Defendant Admissions regarding usage of Chemoil Pickup Trucks by Plaintiffs). *See also* **app. p. 588** (Ex. M – Green 30(b)(6) Depo. 140:9-21).

[56] **App. pp. 581-82** (Ex. M – Green 30(b)(6) Depo. 133:5-134:5).
    Q:    And did you tell [the Department of Labor Investigator] who drives the F-150?
    **A:    I said the crew. The crew gets there.**
    Q:    But you weren't able to – to specify who drove the F-150?
    **A:    No.**
    *Q:    Is there a reason why you didn't tell her who drove the F-150?*
    ***A:    Because I don't know. I don't know who drives the F-150 to and from the job site.***
    Q:    So if a frac fuel driver in this case says that they drove an F-150 to and from the frac site, what basis do you have to refute that?
    **A:    While they were working they drove it.**
    Q:    At any time, sir.
    **A:    Could a frac fuel driver drive an F-150 pickup from home to work? I guess so.**
    Q:    At any time, even during the regular workday at the frac site?
    **A:    No.**
    Q:    It's not possible?
    **A:    Possible? Very rarely. May it happen? Yes.**
    Q:    Okay. Because I think less than a minute ago you just told me that you were unable to tell the DOL whether or not that happened because you didn't know. So which one is it? Do you know or don't you know?
    **A:    No, I – I --**

[57] **App. pp. 84-85** (Ex. G – Santos Decl. ¶ 7).

[58] *See* 29 U.S.C. § 255(a) (discussing the relevant two year and three year [willful] statutes of limitations under the FLSA).

[59] For instance, Plaintiff Cody Babb started as a frac fuel driver with Chemoil on or about November 20,

fuel drivers, Plaintiffs earned between $22.00 and $18.40 per hour, due to a company-wide pay cut in March or April of 2016.[60] There is no year in the relevant time period in which any Plaintiff earned total annual compensation of $100,000 or more.[61] Plaintiffs' work as frac fuel drivers was manual labor.[62] The Chemoil Pickup Trucks have a GVWR of 7,200 pounds.[63]

## F.  Department of Labor Investigation.

Chemoil has been the subject of multiple Department of Labor ("DOL") investigations and as well two lawsuits related to overtime wage payment of frac fuel drivers.[64] Apart from its

---

2014. **App. p. 97** (Ex. I – Def. Interrogatory Answers 2(a) & (b)); **app. pp. 358-59, 381** (Ex. L – Babb Depo. 37:8-9, 38:5-12, 61:15-20); **app. p. 21** (Ex. D – Babb Damages (begin on December 5, 2014, due to wages paid in arrears)). However, on or about September of 2017, Babb became a Chemoil transport driver. **App. pp. 361,381** (Ex. L – Babb Depo. 40:6-23, 61:15-20); **app. p. 22** (Ex. D – Babb Damages (end at September 2016)). Plaintiff Vicente Santos began working for Chemoil as a frac fuel technician but was shortly promoted to a frac fuel driver. **App. p. 103** (Ex. I – Def. Interrogatory Answer 2(a) & (b)); **app. p. 23** (Ex. D – Santos Damages (Santos received overtime pay until April 25, 2014, when he became a frac fuel driver)). Plaintiff Miguel Elizondo was a frac fuel driver from February 4, 2013 until on or about April 1, 2016, when he became a frac fuel technician. **App. p. 109** (Ex. I – Def. Interrogatory Answer 2(b)); **app. p. 27** (Ex. D – Elizondo Damages (Elizondo began receiving overtime pay on April 8, 2016, shortly after he became a frac fuel technician)). Plaintiff Samuel Lee was at all times employed with Chemoil as a frac fuel driver between on or about November 21, 2014 through on or about May 15, 2015; **app. p. 93** (Ex. I – Def. Interrogatory Answers 2(a) & (b); **app. p. 294** (Ex. K – Lee Depo. 23:10-22); **app. p. 20** (Ex. D – Lee Damages).

[60]  **App. pp. 93, 97, 103, 109** (Ex. I – Def. Interrog. Answer 2(d)); **app. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)); **app. pp. 516-17** (Ex. M – Green 30(b)(6) Depo. 68:15-69:3); **app. pp. 361-63** (Ex. L – Babb Depo. 40:21-41:5, 41:20-42:12 (discussing companywide pay cut on or about March 2016)); **app. p. 470** (Ex. M – Green 30(b)(6) Depo. 22:15-23 (discussing pay cuts generally)).

[61]  **App. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations).

[62]  *See e.g.*, **app. pp. 444-45** (Ex. L – Babb Depo., Exhibit 3 – Frac Fuel Driver Job Description); **app. p. 295-296** (Ex. K – Lee Depo. 24:17-25:3 (job duties described to Lee at interview were "Just that I would be driving the frac fuel trucks, and I would be fueling while on site.")).

[63]  **App. p. 77** (Ex. F – Babb Decl. ¶ 5); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3).

[64]  **App. pp. 462-**63 (Ex. M – Green 30(b)(6) Depo. 14:24-15:4). The investigation in 2013 resulted in, among other things, Chemoil no longer paying its employees a day rate. *See* **app. p. 47** (Ex. M – Green 30(b)(6) Depo. 47:1-10). Chemoil was also sued by Elton Bowman, a frac fuel driver in Oklahoma, for unpaid overtime he claimed was due. **App. pp. 455-57** (4:21-9:22). Chemoil was also sued by Manuel Valdez in the case consolidated with this case for discovery purposes *Valdez v. Chemoil Corporation, Energy Division*, 5:16-CV-419-XR ("the "*Valdez*" case). **App. pp. 806-840** The *Valdez* case has settled and been dismissed by this Court. The Court is respectfully requested to take judicial notice of same. *See In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 858 (E.D. La. 2012), *aff'd*, 742 F.3d 576 n. 5 (5th Cir. 2014), and *aff'd sub nom. In re Chinese-*

self-serving denial that frac fuel drivers drove the Chemoil Pickup Trucks in fulfilling their job duties to, at, and from the remote frack worksites, Chemoil's defense as to damages in this case is that the 2013 DOL investigation exonerates it from imposition of liquidated damages.

However, Defendant did not make a meaningful distinction between the frac fuel driver and transport positions. Defendant's 30(b)(6) corporate representative states only that the DOL investigator was provided with a frac fuel driver job description, which did not contain any mention of working as drivers, driver helpers, or loaders on motor vehicles weighing 10,000 pounds or less.[65]

As a result, the DOL report includes only one job position to do with transporting fuel – "fuel haulers."[66] That analysis does not include a job duty related to driving a small vehicle, nor does it address the small vehicle exception.[67] Moreover, the statement of the DOL representative, that "CDL drivers were found to be exempt under the Motor Carrier Act [. . .],"[68] in response to Jeff Green's inquiry about "exempt CDL employees," was ambiguous because, by Chemoil's own admission,[69] it had two job positions that required an employee to maintain a CDL.[70]

## G. Chemoil's Alleged Subsequent Remedial Measures.[71]

After this lawsuit was filed, Defendant took various inconsistent measures to attempt to mitigate its liability. First, one of Defendant's employees sent a text message to various frac fuel

---

*Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014).

[65] **App. pp. 578-79** (Ex. M – Green 30(b)(6) Depo. 130:22-131:13). *See also, e.g.*, **app. pp. 444-45** (Ex. L – Babb Depo., Exhibit 3 – Frac Fuel Driver Job Description).

[66] **App. p. 662** (Ex. M – Green 30(b)(6) Depo. Exhibit 9).

[67] *Id.*

[68] **App. p. 794** (Ex. Q – September 6, 2013 Email from Department of Labor Representative).

[69] **App. pp. 503, 517** (Ex. M - Green 30(b)(6) Depo. 55:3-14; 69:1-3).

[70] **App. p. 80** (Ex. F – Babb 2d Decl. ¶ 1); **app. pp. 82-83** (Ex. G – Santos Decl. ¶ 2); **app. p. 89** (Ex. H – Elizondo Decl. ¶ 2).

[71] Per Federal Rule of Evidence 407, evidence of Defendant's subsequent remedial measures is not tendered to offer proof of liability, but offered solely to demonstrate Chemoil's knowledge of Plaintiffs' driving the Chemoil Pickup Trucks in considering damages, and whether damages in this lawsuit ceased to accrue pursuant to the FLSA's continuing violation doctrine.

drivers stating that they were only to drive a crew vehicle so long as they were pulling a trailer.[72]

On or about May 2017, Plaintiff Santos received an amended job offer letter including Defendant's new policy that frac fuel drivers are not to drive trucks weighing 10,000 pounds or less.[73] Santos also began to receive a weekly text message querying whether he had driven a small truck in that week.[74] Without conceding that Defendant took any true remedial measure, Plaintiffs only request damages for work occurring prior to May 2017 for purposes of this MSJ. However, Plaintiffs provide these communications as further proof of Defendant's liability in that it knew or had reason to believe that frac fuel drivers were driving motor vehicles weighing 10,000 pounds or less, and that Defendant's violations of the FLSA were willful.

## III.   ARGUMENTS AND AUTHORITIES

### A. Legal Standards.

#### 1. Summary Judgment Standard.

A court shall grant summary judgment when a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). *See also Perkins v. Bank of Am.*, 602 F. App'x 178, 180 (5th Cir. 2015) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Summary judgment is appropriate if a non-moving party cannot "designate 'specific facts showing that there is a genuine issue for trial.'" *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986)). To establish that there is no dispute to any material fact, and thereby prevail on summary judgment, a moving party must initially "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.*; FED. R. CIV. P. 56(c)(1)(A) & (B). Ultimately, a non-moving party bears the burden to "go

---

[72] **App. pp. 84-85** (Ex. G – Santos Decl. ¶ 7).
[73] **App. pp. 86, 87** (Ex. G – Santos Decl. ¶ 9, Exhibit 1).
[74] **App. pp. 86, 88** (Ex. G – Santos Decl. ¶ 9, Exhibit 2).

beyond the pleadings and identify specific proof in the record and articulate the precise manner in which that proof supports his claim." *Moore v. City of Austin*, No. A-16-CV-165-LY, 2016 WL 4146199, at * 3 (W.D. Tex. Aug. 2, 2016) (citing *Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 401-02 (5th Cir. 2005)).

Finally, if "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). The movant "must demonstrate the absence of a genuine issue of material fact," but does not have to "*negate* the elements of the nonmovant's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (emphasis in original) (internal quotation marks omitted). If the non-moving party cannot provide some evidence to support its claim, summary judgment is appropriate. *Id.*

**2.  Employer's Burden of Proof with Regard to FLSA Exemptions.**

It is an employer's substantial burden to prove that an employee falls "plainly and unmistakably" within the terms of a pleaded FLSA exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, (1945). *See also, e.g.*, *McLeland v. 1845 Oil Field Servs.*, 97 F. Supp. 3d 855, 861 (W.D. Tex. 2015) (Rodriguez, J.) (citations omitted). The employer, not the employee bringing suit, bears the burden of proving that it is entitled to the benefit of an exemption. *Mitchell v. Ky. Fin. Co.,* 359 U.S. 290, 291 (1959); *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). Moreover, FLSA exemptions, including the MCAE,[75] are "construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016) (affirming jury verdict in FLSA overtime case that employer failed to establish each element of the MCAE for a class of approximately 110 frac

---

[75] 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.

sand truck drivers).

To prove employees are exempted by the MCA, employers must plainly and unmistakably demonstrate not only that the MCA applies to the work done by its employees, but also that the employees are *not* "covered" employees pursuant to the TCA.[76] *See Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 692 (S.D. Tex. 2012) (finding that the TCA "narrowed the range of employees who were covered by the [MCAE]") *aff'd*, *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279 (5th Cir. 2014). *See also Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441 (W.D. Tex. 2016) (Rodriguez, J.) ("Given the above 'in whole or in part' language, it is the employer's burden to demonstrate that the employees exclusively drove vehicles greater than 10,000 pounds during a workweek."); *Moore v. Performance Pressure Pumping Servs., LLC*, No. 5:15-cv-346-RCL, 2017 WL 1501436, at *9 (W.D. Tex. Apr. 26 2017) ("Defendant bears the burden of establishing that they are exempt under the FLSA, including that the Small Vehicle Exception to the MCA Exemption *does not* apply").

## B. Threshold Liability Exists Because Defendant Was Plaintiffs' Employer, Defendant was an Enterprise Engaged in Commerce, and It Is Undisputed that Defendant Did Not Pay Overtime Premiums to Plaintiffs.

In order to prevail on any FLSA overtime claim,

[a]n employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (citing cases).

---

[76] TCA, Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 160-21 (effective June 6, 2008).

Therefore, Plaintiffs must first prove that they were employed by the defendant during the time period made relevant under the statute of limitations as defined at 29 U.S.C. § 255. Here, it is undisputed that Plaintiffs were employees of Defendant at all times relevant.[77]

Plaintiffs must also show that Defendant was an "enterprise engaged in commerce," which is an enterprise that "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 [. . .]" as required by 29 U.S.C. § 203(s)(1)(A). Here, Defendant has admitted that it is an "enterprise engaged in commerce" under the FLSA.[78] This admission is equally applicable to all Plaintiffs.[79] In addition to admitting it is an enterprise engaged in commerce, Defendant also admits all elements necessary to establish same.[80]

Finally, it is undisputed that Plaintiffs regularly worked in excess of 40 hour workweeks, but that Defendant did not pay overtime premium pay for those overtime hours.[81] Instead, Defendant paid Plaintiffs only their straight time hourly rate for all hours worked.[82]

Clearly, Plaintiffs have met their initial burden to show that Plaintiffs were employees of Chemoil, an enterprise engaged in commerce, and that Chemoil did not pay Plaintiffs any overtime wages in violation of the FLSA. However, Defendant contends it was not required to

---

[77] **App. pp. 1-5** (Ex. A – excerpts from Defendant's live Answer (ECF No. 47) and Def. Resp. to Plaintiffs' Req. for Admission).

[78] **App. pp. 6-10** (Ex. B – excerpts from Defendant's live Answer (ECF No. 47) and Def. Resp. to Plaintiffs' Req. for Admission).

[79] *Id.*

[80] *Id.*

[81] **App. pp. 791-793** (Ex. P – McLaughlin Decl. ¶¶ 2-4); **app. pp. 489, 490-92** (Ex. M - Green 30(b)(6) Depo. 41:20-23, 42:17-43:4, 43:13-44:19); **app. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)).

[82] *Id.*

pay overtime to Plaintiffs pursuant to its alleged MCAE, and other alleged exemptions it has "considered withdrawing."[83]

**C.** **The Administrative, Executive, and Highly Compensated Employee Exemptions Do Not Apply to Plaintiffs Because They Were All Hourly-Paid Employees, Performed Manual Labor Tasks, and Earned Less than $100,000 Per Year.**

Defendant has pleaded that Plaintiffs were exempt employees pursuant to the Administrative,[84] Executive,[85] and Highly Compensated Employee ("HCEE")[86] Exemptions. *See* 29 U.S.C. § 213(a)(1). However, Defendant has indicated it may withdraw those affirmative defenses.[87]

Under the FLSA, the executive and administrative exemptions require that a worker must be paid "on a salary or fee basis at a rate of not less than $455 per week [. . .]"[88] and the HCEE requires that a worker must be compensated $100,000 or more annually, "which includes at least $455 per week paid on a salary basis."[89] Defendant has produced no evidence in connection with those requests for production to support these pleaded exemptions.[90] Nonetheless, Defendant has filed three answers since those discovery responses were served, and continues to advance those exemptions, therefore Plaintiff will address their obvious inapplicability.[91]

---

[83] **App. pp. 700-717** (Ex. N – Def. Resp. to Req. for Prod. and relevant Def. Answer)).
[84] 29 C.F.R. § 541.200-04.
[85] 29 C.F.R. § 541.100-06.
[86] 29 C.F.R. § 541.601.
[87] **App. pp. 700-717** (Ex. N – Def. Resp. to Req. for Prod. regarding Administrative Exemption, Executive Exemption, and HCEE, and producing no responsive documents).
[88] 29 C.F.R. § 541.100(a)(1); 29 C.F.R. § 541.200(a)(1).
[89] 29 C.F.R. § 541.601(b)(1).
[90] **App. pp. 700-717** (Ex. N – Def. Resp. to Req. for Prod. regarding Administrative Exemption, Executive Exemption, and HCEE, and producing no responsive documents).
[91] *See* ECF No. 47, p. 3, Ninth Defense.

1. **Defendant Cannot Prove that Any of the Pleaded Exemptions Apply Based on Pay Received – Plaintiffs Were Hourly-Paid, as Opposed to Salaried, Employees.**

It is undisputed that Plaintiffs were hourly-paid workers, and were paid no money in the form of a salary.[92] Accordingly, Plaintiffs are not subject to these exemptions, and no reasonable juror could find that Plaintiffs were bona fide executive or administrative employees, nor that the HCEE applied to them, regardless of their amount of pay. *See, e.g.*, *Pearson v. Trinity Armored Sec., Inc.*, No. 4:13-CV-281-Y, 2014 WL 12531275, at *3-5 (N.D. Tex. Sept. 3, 2014) (finding that where defendants admitted that plaintiffs were hourly-paid, and could not present evidence of guaranteed a minimum pay of $455 per week, the plaintiff-employees were not subject to these types of exemptions).

2. **Manual Labor Work, Such as that Performed by Plaintiffs, Precludes Application of the Executive, Administrative, and HCEE.**

The Executive Exemption, Administrative Exemption, and HCEE are amongst those exemptions collectively referred to as the "White Collar Exemptions." *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2012 WL 12882001, at *2 (W.D. Tex. Sept. 21, 2012) (Lane, Mag.), *adopted by Benavides v. City of Austin*, No. A-11-CV-438-LY, 2012 WL 12883127 (W.D. Tex. Oct. 15, 2012) (Yeakel, J.) (white collar exemptions include executive, administrative or professional exemptions); 29 C.F.R. § 541.601(a)(2) (highly compensated employee performs one or more of the job duties of executive, administrative, or professional exemptions. Those exemptions do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy." 29 C.F.R. § 541.3(a).

---

[92] **App. pp. 791-793** (Ex. P – McLaughlin Decl. ¶¶ 2-4); **app. pp. 489, 490-92** (Ex. M - Green 30(b)(6) Depo. 41:20-23, 42:17-43:4, 43:13-44:19); **app. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 93, 97, 103, 109** (Ex. I – Def. Interrogatory Answer 2(d)); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)).

Similarly, the HCEE exemption does not apply to employees performing manual labor. 29 C.F.R. § 541.601(a)(2) ("[The HCEE] applies only to employees whose primary duty includes performing office or non-manual work). Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be."); *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (unpublished) (HCEE does not apply to manual labor workers); *Galvan v. FTS Int'l Servs., LLC*, No. MO:16-CV-00147-RAJ, 2017 WL 1284794, at *4 (W.D. Tex. Mar. 21, 2017) (Junell, J.) ("The [HCEE] applies only to employees whose primary duty includes performing office or non-manual work[. . .]."); *Guyton v. Legacy Pressure Control*, No. 5:15-CV-1075-RCL, 2017 WL 244868, at *2 (W.D. Tex. Jan. 18, 2017) ("If an employee's primary duty is manual labor, the [HCEE] does not apply, regardless of how much they are paid.").

Here, there is no genuine issue of material fact that Plaintiffs' primary job duties with Defendant were manual in nature. Plaintiffs' primary job duties were driving big and small trucks, cleaning fuel spills, fueling fracking equipment, and performing other work at and around oilfield fracking wellsites.[93] This is another reason why Defendant cannot prove the HCEE.

---

[93] **App. pp. 444-45** (Ex. L – Babb Depo. Exhibit 3 (Frac Fuel Driver Job Description)); **app. p. 490** (Ex. M – Green Depo. 42:9-19 (describing frac fuel drivers as hourly-paid employees whose primary duty is to drive vehicles).

**3.** **Additional Reasons Why Defendant Cannot Prove the Administrative or Executive Exemptions.**

Setting aside that Plaintiffs were all hourly-paid workers and performed manual labor primary job duties as shown in detail *supra*, Defendant cannot produce evidence to support its contention that Plaintiffs were subject to the administrative employee or executive employee exemptions.[94]

Plaintiffs' primary job duties are clearly manual work as opposed to "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,"[95] as Defendant is required to demonstrate to prove the administrative employee exemption.[96]

With regards to the Executive Exemption, Defendant has not and cannot produce evidence to show that any Plaintiff's primary duties were "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof" so as to succeed on that affirmative defense. 29 C.F.R. § 541.100(2). Defendant's own descriptions of the Plaintiffs' main job duties do not include any managerial function whatsoever.[97]

---

[94] 29 C.F.R. § 541.200-04.
[95] 29 C.F.R. § 541.200(2).
[96] **App. pp. 444-45** (Ex. L – Babb Depo. Exhibit 3 (Frac Fuel Driver Job Description)); **app. p. 490** (Ex. M – Green Depo. 42:9-19 (describing frac fuel drivers as hourly-paid employees whose primary duty is to drive vehicles); **App. pp. 700-717** (Ex. N – Def. Resp. to Req. for Prod. regarding Administrative Exemption, Executive Exemption, and HCEE, and producing no responsive documents).
[97] **App. pp. 444-45** (Ex. L – Babb Depo. Exhibit 3 (Frac Fuel Driver Job Description)); **app. p. 490** (Ex. M – Green Depo. 42:9-19 (describing frac fuel drivers as hourly-paid employees whose primary duty is to drive vehicles); **app. pp. 700-717** (Ex. N – Def. Resp. to Req. for Prod. regarding Administrative Exemption, Executive Exemption, and HCEE, and producing no responsive documents).

**4. The HCEE Cannot Be Proven by Defendant because Plaintiffs Did Not Have Annual Compensation of $100,000 or More.**

In order for the HCEE to apply, Defendant must prove that each Plaintiff had total annual compensation of at least $100,000 for each relevant year in this lawsuit. *Guyton*, 2017 WL 244868, at *2 (citing 29 C.F.R. § 541.601(b)).[98] Defendant cannot prove that there is any year in the relevant time period in which any Plaintiff earned total annual compensation of $100,000 or more.[99]

**D. The Motor Carrier Act Exemption Does Not Apply Because Plaintiffs Performed Weekly Work, in Whole or in Part, as Drivers, Driver Helpers, and/or Loaders of Motor Vehicles with Gross Vehicle Weight Ratings of 10,000 Pounds or Less.**

**1. The Clear Unambiguous Language of the TCA Narrows the Scope of the MCA Exemption, and Federal Courts Have Relied on the Plain Meaning of "In Part" to Recognize the Expansion of the FLSA's Overtime Protections Through the TCA.**

The enactment of the TCA[100] in 2008 corrected the MCAE to mandate that employers pay overtime premiums to those "covered employees" who do work "**in whole or in part**" as a "driver, driver's helper, loader, or mechanic; and as affecting the safety of operation of motor vehicles weighing **10,000 pounds or less** in transportation on public highways in interstate or foreign commerce [. . .]." *See* Section 306(3) of the TCA (emphasis added).

This Court recognized the intent of the TCA in *Roche v. S-3 Pump Serv., Inc.* 154 F. Supp. 3d 441 (W.D. Tex. 2016) ("Given the above 'in whole or in part' language, it is the

---

[98] As noted in *Guyton*, the annual compensation required for this exemption changed to $134,004 per year on December 1, 2016. 2017 WL 244868, at *2 n.1. While that change in salary is on appeal in a different case, that issue is not relevant as Defendant cannot demonstrate that any Plaintiff earned $100,000 or more annually.

[99] *See* **app. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations); **app. pp. 843, 845, 848, 851** (Ex. U – Summaries of Yearly Pay/Summary of Voluminous Data per Federal Rule of Evidence 1006).

[100] TCA, Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 160-21 (effective June 6, 2008).

employer's burden to demonstrate that the employees exclusively drove vehicles greater than 10,000 pounds during a workweek").

Other courts have similarly found that the TCA limits the MCAE and provides the FLSA's protection to individuals who work as drivers, driver helpers, loaders, or mechanics on vehicles weighing both more than 10,000 pounds and 10,000 pounds or less. *See, Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 692 (S.D. Tex. 2012) (finding that the TCA "narrowed the range of employees who were covered by the MCA exemption") *aff'd, Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279 (5th Cir. 2014). *See also, e.g., Aikins v. Warrior Energy Servs. Corp.*, No. 6:13-CV-54, 2015 WL 1221255, at *5 (S.D. Tex. Mar. 17, 2015) ("This Court declines to adopt a reading of the TCA that any significant use of vehicles weighing more than 10,000 pounds excludes an employee from FLSA coverage); *Vanzzini v. Action Meat Distribs.*, 995 F. Supp. 2d 703, 716 (S.D. Tex. 2014) ("[A]fter the SAFETEA-LU and TCA amendments, truck weight can be dispositive because the TCA carved out from the MCA Exemption those drivers working with trucks weighing less than 10,000 pounds."); *O'Brien v. Lifestyle Transp., Inc.*, 956 F. Supp. 2d 300, 305 (D. Mass 2013) ("In sum, covered employees are entitled to overtime, regardless of the MCAE. The test is clear: if an employee works as a driver of motor vehicles that weigh less than 10,000 pounds in the provision of interstate transportation and is employed by a motor carrier, that employee is entitled to overtime pay under the FLSA."); *Mayan v. Rydborn Express, Inc.*, No. 07-2658, 2009 WL 3152136, at * (E.D. Pa. Sept. 30, 3009) ("In short, the employees must simply perform *some work* on [vehicles weighing 10,000 pounds or less]" to merit overtime pay.).

## 2. <u>Plaintiffs Were "Covered Employees" Pursuant to the Technical Corrections Act.</u>

Plaintiffs' claims, and the Department of Labor investigations, all arise after the enactment of the TCA in 2008. As shown in the Statement of Facts Not in Dispute, above,

Plaintiffs performed numerous, meaningful and substantial weekly work assignments and duties as drivers, driver helpers, or loaders of motor vehicles with GVWR of 10,000 pounds or less while employed by Defendant during the relevant time period. Specifically, Plaintiffs routinely performed job duties using Chemoil Pickup Trucks for those job duties.

Plaintiffs used the Chemoil Pickup Trucks to carry supplies such as such as fire extinguishers, wheel chalks, grounding cables, safety harnesses, and oil-absorbing cleaning pads, across the frac site and to go into town to retrieve necessary parts and equipment to perform their fueling duties.[101] Plaintiffs also used the Chemoil Pickup Trucks to drive back and forth between the hotel or other location where they were staying to the fracking worksites.[102] They were not permitted to use their personal vehicles to access those secure fracking worksites.[103]

Plaintiffs' activities involving the Chemoil Pickup Trucks were "work" according to the FLSA. *See* 29 C.F.R. § 785.41.[104] The work involved was more than *de minimis* because driving the Chemoil Pickup Trucks into town or to the yard to obtain needed materials and equipment, such as nozzles, tools and gas for the Chemoil Pickup Trucks, or from location to location at frac sites, or between frac sites and hotels on remote assignments required more than just a "few seconds or minutes of work." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, § 4(a)(1), 29 U.S.C. § 254(a)(1), *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 135 S.Ct. 513, 519

---

[101] **App. p. 78** (Ex. F – Babb Decl. ¶ 8); **app. pp. 83-4** (Ex. G – Santos Decl. ¶ 4); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 4); **app. p. 311, 336-38** (Ex. K – Lee Depo. 62:8-25, 95:21-96:11, 96:22-97:4); **app. pp. 368, 382-83** (Ex. L – Babb Depo. 47:5-21 , 62:19-63:6); **app. p. 514** (Ex. M. – Green 30(b)(6) Depo. 66:7-12).

[102] (*See generally*, **app. pp. 325-33,** (Ex. K – Lee Depo. 84:21-92:10, 93:25-95:12); **app. pp. 399-402** (Ex. L – Babb Depo. 100:16-21, 101:2-103:22)).

[103] **App. p. 504-05** (Ex. M – Green 30(b)(6) Depo. 56:18-57:8); **app. p. 78** (Ex. F – Babb Decl. ¶ 8); **app. p. 84** (Ex. G – Santos Decl. ¶ 6).

[104] "Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding[. . .]."

(2014). Plaintiffs' descriptions show that the work done with the Chemoil Pickup Trucks was generally "more than once each week," in the case of performing work during the course of their shift,[105] and on a near daily basis during crew changes.[106] They all testify, and Defendant's records reflect, that the majority of their time spent driving a vehicle was a Chemoil Pickup Truck, and that not a week went by that they did not drive a Chemoil Pickup Trucks when performing their primary job duties.[107]

Under these exact same facts, this District Court has found that the TCA limits the MCAE and provides that the FLSA's overtime protections apply to individuals who worked on vehicles weighing both more than 10,000 pounds and 10,000 pounds or less during the same workweek. *See, e.g.*, *Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 556 (W.D. Tex. 2017); *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441 (W.D. Tex. 2016).

Per this Court's binding holding in *Roche*, Defendant cannot meet its burden to demonstrate any single week in which Plaintiffs did not work as a driver, driver helper, or loader of a Chemoil Pickup Truck, the GVWR of which was undisputedly 7,200 pounds.[108] Here, as in *Roche*, Defendant[ has] failed to make any such showing [that Plaintiffs exclusively drove vehicles greater than 10,000 pounds during a workweek] and Plaintiffs' summary judgment evidence shows that Defendant cannot meets its burden of proof to establish same. *See id.* at 448-49. Again, Defendant has the burden of proof to establish the MCAE, and that exemption, like all others, is narrowly construed against employers. *Olibas*, 838 F.3d at 448.

---

[105] **App. pp. 78** (Ex. F – Babb Decl. ¶ 8); **app. pp. 336-38** (Ex. K – Lee Depo. 95:21-96:11, 96:22-97:4); **app. pp. 368, 382-83** (Ex. L – Babb Depo. 47:5-21, 62:19-63:6); **app. pp. 83-4** (Ex. G – Santos Decl. ¶ 4) **app. p. 90** (Ex. H – Elizondo Decl. ¶ 4).

[106] **App. pp. 328, 333** (Ex. K – Lee Depo. 87:16-21, 92:4-10); **app. pp. 83-84** (Ex. G – Santos Decl. ¶¶ 5, 6); **app. p. 91** (Ex. H – Elizondo Decl. ¶ 5).

[107] *Id.*; **App. p. 725, 743**, **766**, **790** (Ex. O –Analysis of Total Hours Paid Spent Driving Bobtail).

[108] **App. pp. 11-19** (Ex. C – Defendant Admissions regarding usage of Chemoil Pickup Trucks by Plaintiffs); **app. p. 588** (Ex. M – Green 30(b)(6) Depo. 140:9-21); **app. p. 77** (Ex. F – Babb Decl. ¶ 5); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3)).

In short, Plaintiffs performed substantial work and duties as drivers, driver helpers, and loaders of Chemoil Pickup Trucks with a GVWR of 7,200 pounds.[109] These job duties were performed on public highways for Defendant's business operations. In *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441 (W.D. Tex. 2016), this Court granted summary judgment in favor of plaintiffs on the issue of inapplicability of the MCAE where the facts were identical to those in this case. The same should apply here as Plaintiffs have demonstrated they were "covered employees" entitled to overtime wages under the FLSA notwithstanding the alleged MCAE defense. Plaintiffs are entitled to summary judgment regarding the inapplicability of the MCAE since Defendant cannot meet is burden of proof to establish each and every element of same.

## IV.    DAMAGES

### A.  Plaintiffs Are Entitled to Back Unpaid Overtime Wages.

An employer who violates the FLSA is liable to its employees for their unpaid overtime wages. 29 U.S.C. § 216(b). "The Fifth Circuit holds that once the fact finder has established that the employee is due unpaid overtime, the proper determination of the regular rate of pay and overtime premium to which an employee is entitled is a question of law." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 798 (N.D. Tex. 2015) (citing *Black v. Settlepou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013)) (quotations omitted), *aff'd sub nom Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016).

Plaintiffs may seek recovery of damages spanning a time period of, at a minimum, two years prior to the filing of this lawsuit, and forward in the case of a continuing violation (the "FLSA two year statute of limitations"). 29 U.S.C. § 255(a). As described further, below, if a plaintiff demonstrates that an employer's violation was willful, they may extend their period of

---

[109] **App. p. 77** (Ex. F – Babb Decl. ¶ 5); **app. p. 83** (Ex. G – Santos Decl. ¶ 3); **app. p. 90** (Ex. H – Elizondo Decl. ¶ 3).

recovery up to three years prior to the filing this lawsuit and forward (the "FLSA three year statute of limitations"). *Id.*

It is undisputed that Plaintiffs regularly worked over 40 hours in a given workweek without being paid any overtime premiums.[110] Consequently, Plaintiffs are entitled to the missing half-time premium for work done over forty hours in each workweek that they worked in a non-exempt role. As shown above, Defendant cannot prove that Plaintiffs worked in an exempt role in any workweek that Plaintiffs were employed by Defendant. Therefore, Defendant is liable to Plaintiffs for damages for each week that they worked overtime hours in the course of Plaintiffs' employment with Chemoil.

Calculating Plaintiffs' due back pay is a simple using Defendant's payroll data. Plaintiffs do not dispute that Chemoil kept adequate records of their hours of work and their pay rate.[111] All that remains is to subtract 40 from the total hours worked per week, and multiply the hours over 40 in each week by half of the hourly pay rate. Attached to this Motion as Exhibit D are calculations for each Plaintiff at the relevant two and three year figures, with liquidated damages.[112] As shown below, Plaintiffs are entitled to liquidated damages for the three years prior to filing a consent to join in this action.

**B.   Plaintiffs Are Entitled to Liquidated Damages.**

Plaintiffs request liquidated damages in an amount equal to back overtime wages. Liquidated damages "constitute compensation for the retention of a workman's pay" where the required wages are not paid on time. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); 29

---

[110] **App. pp. 791-793** (Ex. P – McLaughlin Decl. ¶¶ 2-4); **app. pp. 489, 490-92** (Ex. M - Green 30(b)(6) Depo. 41:20-23, 42:17-43:4, 43:13-44:19); **app. pp. 112-288** (Ex. J – Pay Records Produced); **app. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)).

[111] Even if Defendant had not kept accurate records, the Fifth Circuit recently stated that "FLSA damages may be estimated, especially when the employer fails to keep required payroll records." *Olibas*, 838 F.3d at 450.

[112] **App. pp. 20-30** (Ex. D – Plaintiff Damage Calculations (identifying rates of pay on a weekly basis)).

C.F.R. § 790.22. Under 29 U.S.C. § 216(b), employers who violate the FLSA's overtime provisions "shall be liable to the [. . .] employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

Plaintiffs are entitled to liquidated damages unless Defendant proves that its failure to pay overtime compensation was in good faith. 29 U.S.C. § 260. The burden is on the Defendant to show "[. . .]that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990). Defendant have the "substantial burden" of proving both their subjective good faith in taking its actions and that it was on objectively reasonable grounds to do so. *Id. See also Olibas*, 104 F. Supp. 3d at 809 ("[An] employer faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA."). There is a strong presumption in favor of imposing full liquidated damages under the FLSA. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).

To prove subjective good faith in failing to comply with the law, Defendant must show that it took "active" or "affirmative" steps to investigate its compliance, or lack thereof, with the FLSA. *Barcellona v. Tiffany English Pub, Inc.* 597 F.2d 464, 468-69 (5th Cir. 1979); *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 895 (S.D. Tex. 2011). To establish objective reasonableness, courts require more than the absence of intent or misunderstanding; there must be "objectively reasonable grounds for the employer to believe itself in compliance with the Act." *Tran v. Thai*, No. CIV.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010) (citing *Solis v. Min Fang Yang*, 345 F. App'x 35, 39 (6th Cir. 2009) (unpublished)). Even if a defendant shows both subjective good faith and objective reasonableness, an award of liquidated

damages remains in the discretion of the district court. *Solis v. Hooglands Nursery, L.L.C.*, 372 F. App'x 528, 530 (5th Cir. 2010) (unpublished).

The FLSA assigns the Court, and not the jury, with the role of finding whether or not the employer acted in subjective and objective good faith with regards to liquidated damages. 29 U.S.C. § 260; *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998) ("[T]he award of liquidated damages remains within the *discretion of the trial court* [. . .]") (emphasis added); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) ("[T]he [FLSA] assigns to the judge the role of finding whether the employer acted in subjective and objective good faith for liquidated damages purposes.").

Here, apart from Defendant's unsubstantiated denial that frac fuel drivers drove the Chemoil Pickup Trucks in performing their daily work duties, Chemoil's main defense with regard to damages is that the 2013 DOL investigation exonerates it from imposition of liquidated damages in this case. However, Plaintiffs have shown that Defendant did not provide the DOL with evidence regarding whether frac fuel drivers drove, helped drive, or loaded small trucks.[113] Defendant cannot show, and courts refuse to find, good faith stemming from a misinformed Department of Labor investigation. *See, e.g.*, *McLean v. Garage Mgmt. Corp.*, Nos. 10 Civ. 3950(DLC), 09 Civ. 9325(DLC) 2012 WL 1358739, at *5-6 (S.D.N.Y. Apr. 19, 2012) (finding a defendant did not meet its "difficult" burden of showing that it acted in good faith even where the DOL approved of its pay practice where the defendant misrepresented to the DOL that its employees were paid on a salary basis where they were actually paid on an hourly basis).

Significantly, the *McLean* court rejected the defendants' claimed reliance on the DOL audits for three separate reasons. First, it found that any informal conversations do not constitute

---

[113] **App. pp. 578-79, 581-82** (Ex. M – Green 30(b)(6) Depo. 130:22-131:13, 133:5-134:5); **app. pp. 444-45** (Ex. L – Babb Depo., Exhibit 3 – Frac Fuel Driver Job Description)).

"active steps" to ascertain the dictates of the law. Second, the court noted that the audits were involuntary and defendant had not requested same and thus, giving government investigators access to records and employees did not relieve defendant of its own obligation to determine what the labor laws require. Third, the court noted that defendant had not shown that any government investigator focused with care on its time and payroll records for the employees in question, and thus the DOL had not undertaken a review to see whether the defendant indeed paid a predetermined amount that did not vary, as required to meet the "salary basis" prong of the executive exemption. "Without such full disclosure, [the defendant] cannot reasonably rely on the existence of the investigations and their failure to find any inadequacies in the compensation system for [the employees]." *Id.* at *6. Moreover, the *McLean* court held that the defendant was not entitled to rely on the fact that it periodically consulted with outside counsel, because it had invoked its attorney-client privilege. *Id.* at *7.

Furthermore, in *Solis v. R.M. Int'l, Inc.*, a case about misclassification of drivers under the MCAE, defendant sought to avoid liquidated damages by relying on a prior involuntary Department of Transportation audit.[114] The court rejected this evidence of good faith, noting "Defendants' generalizations about entire classes of their drivers on the basis of DOT citations of some of its drivers are insufficient to establish the objective reasonableness of Defendants' failure to comply with FLSA." *Id.*

Here, Defendant cannot meet its burden to show subjective and objective good faith where it did not make full disclosure to the DOL,[115] it invoked attorney-client privilege with regard to its consultations with outside counsel,[116] and where it relied on a determination that

---

[114] **App. pp. 798** (Ex. R – *Solis* Verdict).
[115] **App. pp. 578-79** (Ex. M – Green 30(b)(6) Depo. 130:22-131:13). *See also, e.g.*, **app. pp. 444-45** (Ex. L – Babb Depo., Exhibit 3 – Frac Fuel Driver Job Description).
[116] **App. p. 571** (Green 30(b)(6) Depo. 123:6-12).

"CDL drivers" were exempt when it had two categories of drivers who were required to maintain commercial driver's licenses.[117] Apart from the shaky DOL investigation documents, Defendant has produced no other document related to good faith.[118]

## C. Plaintiffs Are Entitled to a Three Year Statute of Limitations Where Defendant's Violations of the FLSA Were Willful.

The FLSA provides for a two year statute of limitations for violations of the statute. 29 U.S.C. § 255(a). However, that time period may be extended to three years if Defendants' conduct was in willful violation of the law. *Id. See also Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). A violation is willful if the employer either knew its conduct violated the FLSA or showed reckless disregard for whether its conduct complied with the law. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Cox*, 919 F.2d at 1416. Courts find a defendant's conduct to be willful where a defendant had knowledge of the law and still refused to comply. *See, e.g.*, *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3rd Cir. 1991).

Here, Plaintiffs have shown that Defendant has long known that Plaintiffs and other frac fuel drivers drove the Chemoil Pickup Trucks in connection with their daily work duties.[119] Defendant misled the DOL into determining that it had only one category of worker who drove using a CDL license – "fuel hauler,"[120] and then relied on an ambiguous determination that "CDL drivers" were exempt pursuant to the MCA.[121] Furthermore, the text message from Ryan Burries to Plaintiff Santos is further proof that Defendant knew or showed reckless disregard for

---

[117] *Compare* **app. p. 794** (Ex. Q – September 6, 2013 Email from Department of Labor Representative) *with* **app. pp. 503, 517** (Ex. M - Green 30(b)(6) Depo. 55:3-14; 69:1-3); **app. p. 80** (Ex. F – Babb 2d Decl. ¶ 1); **app. pp. 82-83** (Ex. G – Santos Decl. ¶ 2); **app. p. 89** (Ex. H – Elizondo Decl. ¶ 2).

[118] **App. pp. 801-05** (Ex. T – Def. Resp. Regarding Good Faith, producing no responsive documents).

[119] **App. pp. 84-85** (Ex. G – Santos Decl. ¶ 7); **app. pp. 376** (Ex. L – Babb Depo. 55:3-12 ("Q: Would you tell the supervisor that they were going to take a break off site? **A: That they were going to go pick up a part, yes."**)).

[120] **App. p. 662** (Ex. M – Green 30(b)(6) Depo. Exhibit 9).

[121] **App. p. 794** (Ex. Q – September 6, 2013 Email from Department of Labor Representative).

the fact that Plaintiffs were working as drivers, driver helpers, or loaders on motor vehicles weighing 10,000 pounds or less.[122]

Defendant's knowledge of determinative facts, and conduct with regard to the DOL demonstrate willfulness. Accordingly Defendant's violations of the FLSA were willful and a three year statute of limitations applies resulting in recoverable damages for the time period of three years preceding the date the lawsuit was filed.

### D.  Post-Judgment Interest, Legal Fees, and Costs.

"[P]ost-judgment interest [pursuant to 28 U.S.C. § 1961] is permitted for damages awarded under the FLSA." *Olibas*, 104 F. Supp. 3d at 813. Plaintiffs ask that the Court award post-judgment interest.

"The FLSA provides that reasonable attorney's fees and costs are penalties that shall be awarded to the employee." *Gagnon*, 607 F.3d at 1043 (citing 29 U.S.C. § 216(b)); *see also Black*, 732 F.3d at 502 ("Under the FLSA, an employer who violates the statute is also required to pay attorney's fees."). Plaintiffs request 14 days from a favorable judgment to seek fees and costs.

### V.  CONCLUSION

Defendant carries the burden of proving the applicability of any exemptions to the FLSA's requirement that workers be paid time and one half their regular rates of pay for all hours worked over 40 in a given workweek. As recently stated by the Fifth Circuit in a MCAE case, the employer bears the substantial burden of proof to establish the applicability of the MCAE. Here, no reasonable juror could find any FLSA exemption applied to Plaintiffs. Because Defendant cannot raise a genuine issue of material fact for trial on its pleaded exemptions, this

---

[122] **App. pp. 84-85** (Ex. G – Santos Decl. ¶ 7).

Court should find Defendant liable for its failure to pay overtime payments to Plaintiffs. Similarly, Defendant cannot meets its burden of proof to establish a good faith basis to avoid imposition of full liquidated damages. Accordingly, Plaintiffs ask that the Court enter judgment in their favor as appropriate per their damage calculations.[123] Plaintiffs respectfully request such other and further relief to which they may be justly entitled including, but not limited to, partial summary judgment on any matter deemed appropriate by the Court.

Respectfully submitted,

By:    s/Allen R. Vaught              
           Allen R. Vaught, TX Bar No. 24004966
           Melinda Arbuckle, TX Bar No. 24080773
           Baron & Budd, P.C.
           3102 Oak Lawn Avenue, Suite 1100
           Dallas, Texas 75219
           (214) 521-3605 – Telephone
           (214) 520-1181 – Facsimile
           avaught@baronbudd.com
           marbuckl@baronbudd.com

ATTORNEYS FOR PLAINTIFFS

<u>**CERTIFICATE OF SERVICE**</u>

On August 22, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the CM/ECF method. I hereby certify that I have served all counsel of record electronically.

           s/Allen R. Vaught            
           Allen R. Vaught

---

[123] **App. pp. 20-30** (Ex. D – Plaintiff Damage Calculations).